**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 18, 2013**

# In the Court of Appeals of Georgia

A13A1423. PRATT v. THE STATE.

PHIPPS, Chief Judge.

John Thomas Pratt was convicted of committing two counts of child molestation against C. F., by: (i) touching her vaginal area; and (ii) touching her breasts.[1] In this appeal, he contends that the evidence was insufficient. We affirm.

When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

[1] OCGA § 16-6-4 (a) (2007) ("A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."). The indictment alleged that Pratt committed the offenses between March 1, 2007 and March 31, 2007.

essential elements of the crime beyond a reasonable doubt."[2] So viewed, the evidence at the jury trial showed the following.

Pratt met C. F. when she was 13 or 14 years old; she attended the church he and his family attended and where he served as a youth leader. C. F. became close to the Pratts, started dating Pratt's son, and "looked at [Pratt] as a father figure," as her own father was then deceased. By February 2007, C. F. had begun spending nights at the Pratts' residence.

When C. F. was 15 years old, in March 2007, Pratt was hospitalized for heart surgery. One night, C. F. stayed in the hospital room with Pratt, along with his wife. During the night, C. F. voluntarily got into the bed with Pratt. She testified that Pratt started rubbing her stomach, then moved his hand down and touched her pubic hair. C. F. told him to stop, and he complied. The next morning, C. F. recounted, she told her boyfriend (Pratt's son) what Pratt had done, but he responded that he did not believe her.

C. F. testified further that, prior to that night at the hospital, Pratt had broached the subject of the two of them having sex; and before and after that night, Pratt had

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III ) (B) (99 SCt 2781, 61 LEd2d 560) (1979) (emphasis in original).

2

inappropriately touched her. On one such occasion before that night, they were hugging while alone in his bedroom and he touched her breasts. She told him to stop, and he complied. On another occasion, when she vacationed at the beach with the Pratts in June 2007, Pratt touched her breasts while he was alone with her applying suntan location to her body. She told him to stop, and he complied. C. F. recalled that, around the time of that vacation, Pratt's son ended their dating relationship.

Sometime after their beach vacation, C. F. told Pratt's wife in his presence what had happened while she was lying in the hospital bed with Pratt. According to C. F., "Everyone was just mad and they told me not to tell anyone . . . [b]ecause he could get in trouble." But later, in August 2007, C. F. told her mother and godmother about the hospital incident, and the police were contacted.

On appeal, Pratt acknowledges that C. F. was 15 years old at the time in question.[3] However, he argues that her claims that he molested her were not credible, in light of other evidence adduced at trial. Pratt took the stand and denied ever molesting C. F., and he gave this version of what happened when C. F. got into his hospital bed:

_____

[3] Pratt recites in his brief that "[C. F.] . . . was 15 at the time of the incidents."

When she laid back, I tried to scoot over and that was actually the side that the line, the – for my monitor and everything were on. And she laid down on the lines and it started pulling from my chest, and I had told her at that point, I said, "[C. F.], you can't lay back on this. I'm – I'm hooked up to all this stuff. You're not going to be able to do that."

Pratt testified that, with a sigh, C. F. got off the bed. Then later that night, Pratt recalled further, "I think she did try to attempt one other time, and I told her again, I said you – I stopped her before she had laid down, I said, 'You can't lay down over here.'"

Additionally, Pratt cites evidence that, when C. F. was in his hospital bed, his body was connected to intravenous tubes and monitoring devices, and he was in pain. Therefore, Pratt argues, it was not reasonable to believe that he had any sexual intent. Moreover, he argues, it was not reasonable for a factfinder to conclude that, after one has been molested, one would thereafter voluntarily get into the perpetrator's bed.

Pratt cites the testimony of his wife who, that night in his hospital room, sat in a recliner a few feet away from his bed. She testified that she had remained awake all that night; that nurses were entering the room continually; that C. F. had tried to curl up and sleep on Pratt's bed, but could not because of various medical tubes and devices attached to him; and that she did not see any inappropriate conduct between

4

Pratt and C. F. Pratt points out that, contrary to C. F.'s testimony that she had told Pratt's son that he had inappropriately touched her when she was lying in his hospital bed, his son took the stand and testified that C. F. had not said anything to him about such an incident. Pratt points out that C. F. made no outcry to any adult that he had inappropriately touched her until months after the hospital stay – which was after his son ended his dating relationship with her. Finally, Pratt cites evidence he elicited that, during the time C. F. was spending time with his family, she was prescribed medication for depression, which she admittedly sometimes failed to take as prescribed; and the testimony of C. F.'s friend who had also taken part in Pratt's youth ministry, that C. F. was "ballistic" and "wasn't able to act normal" if "she was off her medicine."

Notwithstanding, at this appellate juncture,[4] "[Pratt] no longer enjoys the presumption of innocence. Moreover, [this court] does not re-weigh the evidence or resolve conflicts in testimony, but rather defers to the jury's assessment of the weight and credibility of the evidence.[5]

---

[4] *Redd v. State*, 232 Ga. App. 666 (1) (502 SE2d 467) (1998) (reiterating that "the test established in *Jackson* is the proper test for [the appellate court] to use when the sufficiency of the evidence is challenged") (citation and punctuation omitted).

[5] *Walker v. State*, 282 Ga. 406 (651 SE2d 12) (2007) (citations omitted).

We do not speculate which evidence the jury chose to believe or disbelieve. Where as here, there was sufficient evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[6]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[6] *Dix v. State*, 307 Ga. App. 684, 686 (1) (705 SE2d 903) (2011) (footnote omitted); see *Lackey v. State*, 286 Ga. 163, 165 (1) (686 SE2d 112) (2009) ("Criminal intent is a question for the jury and may be inferred from conduct before, during and after the commission of the crime.") (citation and punctuation omitted); *Hammontree v. State*, 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007) (noting that victim's testimony alone may suffice to establish the elements of child molestation); *Gibbs v. State*, 256 Ga. App. 559, 560 (568 SE2d 850) (2002) (concluding that evidence that defendant touched victim's breasts and vaginal area was sufficient to support child molestation conviction); *Redd*, supra at 666-667 (1) (concluding that evidence was sufficient to sustain child molestation convictions, where the victim, a nine-year-old niece of defendant's girlfriend, testified that defendant had rubbed her "boobs" and her "privates" beneath her nightgown and panties one night when she slept in the same bed with defendant and defendant's girlfriend, and where defendant stopped when the victim told him to stop).